UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA          :
                                  :
v.                                :         No.  2:13-cr-29-1
                                  :
OLIVER REED,                      :
                                  :
        Defendant.                :

                      **MEMORANDUM OPINION AND ORDER**

Defendant Oliver Reed is charged with one count of possession with the intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a), (b)(1)(D). Reed filed a motion to suppress evidence derived from cell phones obtained through a search of his residence pursuant to a warrant on February 19, 2013. For the reasons set forth below, this Court **denies** Reed's request.

                              **BACKGROUND**

**I. The Investigation**

In his warrant application of February 19, 2013, DEA Task Force Agent Robert Estes set out the following information. Mot. to Suppress Ex. 1, ECF No. 15-1. On May 2, 2012, law enforcement in Essex, VT attempted to conduct a controlled buy of marijuana. A Cooperating Source (CS) approached a suspected seller, who arranged a meeting in Burlington with a source of supply allegedly known as "Oliver." Although attempted surveillance of the meeting was unsuccessful, Detective Ruttenberg of the Essex

Police Department observed "Oliver" leaving the meeting carrying a backpack. The CS informed law enforcement that the CS saw two to five pounds of marijuana in the backpack. The CS identified a photo of Reed as the man known as "Oliver."

Also in May of 2012, a Source of Information (SOI)—who had previously been caught with a large quantity of marijuana near the U.S./Canada border—described to police a man known as "Ollie" who lived on North Willard Street in Burlington. The SOI had delivered large quantities of marijuana to "Ollie" in 2011. The SOI went with police to identify "Ollie's" residence as 205 North Willard Street.

Another Source of Information (SOI 2) also identified Oliver Reed as a distributor of marijuana and as living at 205 North Willard Street. SOI 2 had been arrested for involvement in a marijuana distribution organization. SOI 2 claimed to have supplied Reed with large amounts of marijuana, often packaged in hockey bags, at his first floor apartment on North Willard Street. The last delivery SOI 2 made to Reed was during the summer of 2012. During the deliveries, SOI 2 observed Reed with large amounts of money and saw Reed remove cash hidden in the wall of his basement.

SOI 2 supplied Reed with large amounts of marijuana at the request of Chris Staniforth. SOI 2 told law enforcement that Staniforth ran a marijuana trafficking group, and that some

marijuana shipments coming in from Canada ended up with Reed. A federal indictment has been issued charging Staniforth with conspiracy to distribute marijuana, but Staniforth had not been arrested at the time Agent Estes wrote the affidavit.

Law enforcement began surveillance of 205 North Willard Street in February, 2013. Between February 7 and 10, agents observed or captured on video activity consistent with marijuana distribution. On February 7, two males entered the residence carrying a small backpack and a large hockey-style bag that appeared to be full. Over an hour and a half later, the men returned with only the backpack, which they proceeded to secure in a hard-shell cargo carrier on top of their SUV. On February 8, a male entered the apartment empty-handed and left over an hour and a half later with a hockey-style bag that appeared to be full. Another man entered the same day and exited carrying a plastic grocery bag. On February 10, a man entered the residence with a small backpack and left about an hour and a half later with a large hockey-style bag, which appeared to be full. Based on surveillance, none of the men mentioned above lived at 205 North Willard Street. Agent Estes indicated that based on his training and experience, the above-described activity is consistent with the distribution of marijuana.

On February 19, 2013, two men entered the residence empty-handed, and when they came out about an hour later, one carried

3

a white box. The man placed the box in the back seat of the Subaru they had arrived in, and then the men got into the car and drove away. Agents maintained surveillance on the Subaru, which traveled to I-89 South. The Vermont State Police conducted a motor vehicle stop of the Subaru on I-89. A canine unit positively alerted to the presence of drugs in the vehicle. At the time Agent Estes wrote the affidavit, the State Police sought a warrant to search the Subaru, but Agent Estes was unaware whether the warrant had been obtained or executed.

The affidavit listed Agent Estes's general knowledge about controlled substance traffickers based on his training, experience, and participation in other investigations. Among other things, Agent Estes knows that controlled substance traffickers maintain records, including electronic and digital data relating to their enterprise. Controlled substance traffickers also maintain records of contact information—names, addresses, and/or telephone numbers—of their associates in the trafficking organization, which may be kept in electronic or digital devices or media. They also are known to take photos of themselves, their associates, their property, and their product. These records and documentation are often maintained at the residence and/or business of the controlled substance distributors where the traffickers have ready access to them.

**II. The Search Warrant**

On February 19, 2013, U.S. Magistrate Judge John M. Conroy issued a warrant authorizing the search and seizure of property at 205 North Willard Street, Apartment 1, Burlington, Vermont. The search warrant application was based on violations of 21 U.S.C. §§ 841(a) and 846, conspiracy to distribute and distribution of marijuana. The warrant incorporated a list of evidence to be seized, prepared by Agent Estes.

Among other things, the list authorized the search and seizure of "documents, records, and items of personal property relating to the purchase, importation and distribution of controlled substances" and then described such items to include cell phones, telephone directories, correspondence, customer and supplier lists and records, computers and computer records, other electronic devices and media capable of storing electronic data, and logs and journals. Mot. to Suppress Ex. 1, ECF No. 15-1 at 5. The list of items authorized to be seized specified that the executing officers were to look for "any and all evidence of trafficking or possession of controlled substances, including but not limited to marijuana. . . ." *Id.* Agents executed the warrant and seized photos, documents, a video camera, cell phones, U.S. currency, marijuana, and packaging materials.

**DISCUSSION**

Reed raises multiple arguments to support his contention that the evidence found on the cell phones seized from his residence should be suppressed. First, Reed claims that the warrant was overbroad because it failed to meet the particularity requirement. Second, he argues that the cell phones should not have been listed as items to be seized because the supporting affidavit did not establish probable cause that the phones were used in the drug offense or otherwise contained evidence of the crime. Finally, Reed argues that even if officers legally seized the cell phones, they failed to obtain additional warrants to search the phones' contents, and therefore the evidence gathered should be suppressed. The Government disagrees with Reed's characterization of the warrant and stands by the searches and seizures of the cell phones. The Government contends that even if the Court finds that the warrant was issued improperly, law enforcement relied on the warrant in good faith, and therefore the evidence should not be suppressed.

**I. Probable Cause for Search and Seizure of Cell Phones**

The Fourth Amendment allows warrants to be issued only after a finding of probable cause. U.S. Const. Amend. IV. The decision to issue a warrant depends on a "totality-of-the-circumstances analysis." *Illinois v. Gates*, 462 U.S. 213, 238

(1983). An issuing magistrate reviews the circumstances set forth in the supporting affidavit and determines whether "there is fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*

Upon review, the Court considers whether the issuing magistrate had a "substantial basis" to conclude that probable cause existed. *Id.* at 238-39. The Court pays considerable deference to the issuing magistrate's probable cause finding. *United States v. Jackstadt*, 617 F.2d 12, 13 (2d Cir. 1980). "In order to encourage the use of warrants, supporting affidavits should be read 'in a commonsense and realistic fashion,' and in a close case any doubts should be resolved in favor of upholding the warrant." *Id.* at 13-14 (citations omitted).

Agent Estes's affidavit clearly supported a finding of probable cause to search Reed's residence. Indeed, Reed does not question the validity of the warrant overall, but specifically challenges whether probable cause existed to seize the cell phones located in his apartment. He argues that the activity described by Agent Estes in the affidavit as being consistent with marijuana distribution did not include the use of cell phones, and that Agent Estes did not mention cell phones as part of his general knowledge about controlled substance traffickers. Read in a commonsense manner, however, the affidavit supports a

7

finding of probable cause to list cell phones as items to be searched and seized.

In the affidavit, Agent Estes described the general knowledge he has acquired about controlled substance traffickers through his training, experience, and participation in investigations. That knowledge included the fact that traffickers commonly maintain addresses or telephones numbers related to their activities in "electronic/digital devices/media." Mot. to Suppress Ex. 1, ECF No. 15-1 at 11. Cell phones fall into the category of "digital devices" equipped to contain contact information of traffickers' associates. The phones could also contain other information, including photographs, that Agent Estes knew controlled substance traffickers usually maintain at their residence or place of business. *Id.* Agent Estes noted that records, notes, and electronic/digital data are usually maintained where traffickers have ready access to them. *Id.* at 10. Modern cell phones could hold such information, and ensure the information would be within reach of the controlled substance trafficker. The magistrate judge had a substantial basis to conclude that probable cause existed to seize cell phones found in the search of Reed's residence.

**II. Breadth of the Warrant**

Once issued, a warrant must particularly describe the place to be searched and the persons or things to be seized to prevent "wide-ranging exploratory search[es]." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). This particularity requirement reduces the breadth of the search by providing guidelines for the executing officers. *Id.* at 76. Warrants therefore cannot authorize collecting evidence of violations of "a broad criminal statute or general criminal activity" with no guidance on which items to seize. *Id.* A warrant may also list categories of items, rather than describing specific items to be seized: "the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment. . . ." *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990).

The warrant in this case incorporated a list of evidence to be seized that included a description of the crime. Mot. to Suppress Ex. 1, ECF No. 15-1. Based on that list, the search would be limited to seizing "[a]ny and all evidence of trafficking or possession of controlled substances. . . ." *Id.* at 5 ¶ 1. The list of evidence to be seized also provided for the seizure of "personal property related to the importation and distribution of controlled substances" and provided examples of specific items, including cell phones that were likely to be

related to the alleged crime. *Id.* at 5 ¶ 2. The officers collected the cell phones as they properly executed the warrant.

Reed argues that the warrant was overbroad because it authorized seizure of any cell phone found in the apartment without any proof that the phone was used to commit a crime. A warrant, however, is issued based on the probability that evidence of a crime will be found in the location to be searched, and lists items to be seized as evidence of that specific crime. The Second Circuit upheld a warrant that authorized seizure of "[a]ny and all papers, records, receipts, documentation, telephone lists and records which may be related to illicit drug activities." *United States v. Washington*, 48 F.3d 73, 77 (2d Cir. 1995). The defendants argued that the warrant too broadly described the items to be seized, but the court disagreed. *Id.* The court found "sufficient particularity" because the warrant described specific categories of drug-related evidence to be seized and the affidavit laid out the facts supporting probable cause. *Id.* Similarly here, as set out above, the warrant describes specific types of evidence to be seized, limited by the items' relation to a specific crime.

Reed also argues that the court should find the warrant overbroad pursuant to *United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013). Unlike here, however, the warrant issued in *Galpin*—for all cameras, computers, cell phones, and any and all

computing or data processing software—failed to "identify the specific offense for which the police [had] established probable cause." *Id.* at 445. Instead, it authorized the search of the property for violations of "NYS Penal Law or Federal Statutes." *Id.* at 447. As described above, the warrant in this case provided adequate guidance limiting the scope of the search for evidence of a specific crime, so the reasoning of *Galpin* does not apply.

**III. Subsequent Search of the Cell Phones**

Reed argues that the warrant authorized law enforcement to seize, but not search, the cell phones found at his residence. Mot. to Suppress, ECF No. 15 at 4. The warrant, however, finds probable cause "to search and seize the person or property" described in the document. Mot. to Suppress Ex. 1, ECF No. 15-1 at 1. The "Search and Seizure Warrant" incorporates the list of "Items to be Seized" as Attachment B. *Id.*

Accordingly, the cell phones seized here could be searched—as properly limited by particularity requirement—for evidence "relating to the purchase, importation, and distribution of controlled substances." Mot. to Suppress Ex. 1, ECF No. 15-1 at 5 ¶ 2. The limitation in this case immediately precedes the listing of the cell phones, clearly applying to all items listed. *Id.* Reed presents no evidence showing that a subsequent

search of the cell phones went beyond the parameters designated by the warrant.

**IV. Good Faith Exception**

In the alternative, the Government argues that even if law enforcement unreasonably searched the cell phones, officers relied on Judge Conroy's warrant in good faith. Gov't Opp'n 4. The exclusionary rule is intended to deter unlawful police conduct by suppressing evidence obtained from unconstitutional searches. *United States v. Leon*, 468 U.S. 897, 919 (1984). When an officer conducts a search within the scope of the warrant with "objective good faith" that the search complied with the Fourth Amendment, the exclusionary rule no longer serves its purpose. *Id.* at 920. As long as the officer's reliance on the warrant was objectively reasonable, "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* at 922 (internal quotations omitted).

Ordinarily, an officer executing a search warrant cannot be expected to question the probable cause finding under which the warrant was issued or the form of the warrant. *Id.* at 921. Fourth Amendment violations would not be deterred by "penalizing the officer for the magistrate's error." *Id.* Therefore, the Supreme Court has limited suppression to circumstances where the

officer could have "no reasonable grounds for believing the warrant was properly issued." *Id.* at 922–23.

Here, officers relied on a facially valid warrant to search the cell phones found in Reed's residence. They had no objectively reasonable basis to question Judge Conroy's probable cause finding or the form of the warrant. Where there was no unlawful police conduct, suppressing the cell phone evidence would have no meaningful deterrent effect on future Fourth Amendment violations. Accordingly, the good faith exception applies.

## CONCLUSION

For the aforementioned reasons, this Court **denies** Reed's motion to suppress evidence.

Dated at Burlington, in the District of Vermont, this 2nd day of October, 2013.

/s/William K. Sessions III
William K. Sessions III
U.S. District Court Judge